# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMADO RAMIREZ ORTIZ,<br><br>        Petitioner,<br><br>    v.<br><br>JOSIE GASTELO,<br><br>        Respondent. | Case No. 1:21-cv-00198-AWI-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DENYING PETITIONER'S REQUEST FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 16) |

Petitioner Amado Ramirez Ortiz is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts that trial and appellate counsel were ineffective, the evidence was insufficient to sustain the verdict, and Petitioner was unlawfully sentenced to an aggravated prison term. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On April 24, 2019, Petitioner was convicted by a jury in the Madera County Superior Court of three counts of second-degree robbery (counts 1, 2, and 4), one count of attempted second-degree robbery (count 3), and one count of possession of a controlled substance (count 5). The jury found true various special allegations regarding Petitioner's use of a firearm during the commission of the offenses. (1 CT[1] 247–60, 271). Petitioner was sentenced to an aggregate

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on April 4, 2021. (ECF No. 13).

imprisonment term of thirty-seven years and eight months, calculated as follows:

- on count 4, robbery, the principal term: the upper term of five years, enhanced by 20 years for the firearm use allegation;

- on each of counts 1 and 2, robbery, consecutive terms of one year (one third the three-year middle term), plus three years and four months for the firearm use enhancement (one-third of 10 years); and

- on count 3, attempted robbery, a consecutive term of eight months, enhanced by three years and four months for the firearm use allegation.

People v. Ortiz, No. F079490, 2020 WL 634411, at *1 (Cal. Ct. App. Feb. 11, 2020). (See also 1 CT 271; 3 RT[2] 606–09).

On February 11, 2020, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Ortiz, 2020 WL 634411, at *3. On April 22, 2020, the California Supreme Court denied the petition for review. (LD[3] 11).

On February 3, 2021, Petitioner filed the instant federal habeas petition in the United States District Court for the Central District of California (ECF No. 1). On February 16, 2021, the petition was transferred to this Court. (ECF No. 3). In the petition, Petitioner raises the following claims for relief: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) sufficiency of the evidence; and (4) violation of the Sixth Amendment with respect to Petitioner's aggravated prison term. (ECF No. 1). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 14, 15).

**II.**

**STATEMENT OF FACTS[4]**

Prosecution Case

    1. *Count 1*

On August 26, 2017, at approximately 11:00 a.m., J.S. was inside her truck on D Street in Madera when Ortiz approached her. He asked if she could jump start his car, which was parked around the corner. J.S. agreed and Ortiz entered her vehicle.

---

[2] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on April 4, 2021. (ECF No. 13).
[3] "LD" refers to the documents lodged by Respondent on April 4, 2021. (ECF No. 13).
[4] The Court relies on the California Court of Appeal's February 11, 2020 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

When J.S. did not see Ortiz's vehicle after two turns, she told him to get out of the car. Ortiz responded by lifting his shirt and showing her a gun in his waistband. He told her she would go wherever he told her to go.

Scared, J.S. tried to get out of her car. Ortiz grabbed her arm and told her he would kill her if she moved. He removed the semiautomatic gun from his waistband and demanded money. J.S. gave him her wallet containing "maybe $86"; Ortiz grabbed the wallet and exited the truck. He again told J.S. not to move.

Within a half an hour, J.S. drove to the police station and reported the incident. About a month later, J.S. selected Ortiz's picture from a photographic array and identified him as the person who entered her truck and pointed the gun at her.

2. *Count 2*

On August 27, 2017, between 2:40 p.m. and 3:20 p.m., V.S. was working alone at a cellular phone store in Madera when a male with a bandana covering his face entered the store, pointed a long, gray gun at her, and demanded all the money in the cash register. V.S. gave the man the $100 to $104 in the cash register. The man took the money, told V.S. not to call the police, and walked out of the store. Shortly after the man left, a gray car sped away from the front of the store. V.S. did not see the man enter the car. She called the police.

The incident was captured on the store's surveillance video system.

3. *Count 3*

On August 28, 2017, at approximately 5:00 p.m., a man wearing a "sweater [with] a hat" and black eyeglasses entered a market in Madera, pointed a long-nosed gun at the clerk, T.A., and demanded money. The man spoke English, which is not T.A.'s native language. T.A. raised his hands in the air.

The man left the store without any money. He entered a brownish colored Nissan occupied by other people and the vehicle drove away.

The store's surveillance system recorded the incident.

4. *Count 4*

On September 7, 2017, at approximately 9:26 a.m., a blue Nissan Altima drove up to the front of a different market in Madera and two masked men exited the vehicle and entered the market. One of the men pointed a gun at the owner, M.M., and demanded all the money in the register. When M.M. put his hands up, he grazed his hand with the gun. It was not loaded. As soon as the gunman racked a round, M.M. opened the register and gave the gunman the contents, between $1,800 and $2,000. The gunman demanded more money and M.M. said he did not have any more. The gunman said he would kill M.M. if he did not give him more money. M.M. told the man to go ahead and shoot him. The gunman fired. The bullet went into the wall.

The incident, which lasted 20 to 30 seconds, was captured on the store's surveillance camera system.

Police found a 9-millimeter shell casing on the floor by the cash register and a bullet hole in the wall behind the casing. Although only a fragment of a bullet was recovered, the bullet strike was consistent with a 9-millimeter bullet.

A few weeks later, M.M. identified Ortiz as the gunman by selecting his picture out of a photographic array.

### 5. *Count 5*

Ortiz was arrested on November 8, 2017, following a vehicle stop. Inside the car's ashtray was .712 grams of methamphetamine, a usable quantity.

### 6. *Police Investigation*

After the first two robberies, the Madera Police Department posted portions of the surveillance videos on the department's Facebook page, asking for the public's assistance in identifying the robbers. On September 13, 2017, an anonymous caller provided a location of the possible suspects. That location, on Bilbao Court, was near all the robberies, which occurred within a two mile radius of each other.

During the ensuing surveillance at Bilbao Court, Detective Hector Garibay made contact with R.I. R.I. said Ortiz was the person depicted in the video stills from the first market and the cellular store. R.I. also identified Ortiz's vehicle as a gray or silver Nissan Altima. R.I. said Ortiz and his brother stayed on R.I.'s property, living in the Nissan. They entered his house occasionally to use the facilities.

However, at trial, R.I. recalled talking to police and seeing some pictures, but did not recall having identified Ortiz in any of the pictures, or identifying Ortiz's vehicle, or explaining Ortiz's living arrangements. R.I.'s failure of recollection was impeached by Detective Garibay's testimony regarding his prior statements.

The long-barreled handgun used in the robberies of the first market and the cellular store was not the same gun as used in the robbery of the second market.

Defense Case

Testifying on his own behalf, Ortiz denied having committed any of the robberies. He admitted having been in the second market and having seen M.M.; he had been there over 50 times because he drove his wife there to cash her checks. He also had been at the first market on various occasions.

Ortiz denied owning a Nissan Altima. Although he was stopped in 2012 while driving a Nissan Altima, the car belonged to his cousin. He previously owned a 2006 Chevy Colorado. About a month before his arrest he bought a BMW Z4. At the time of the robberies, he lived in the house on Bilbao Court with his wife. He had a rental agreement to live there.

Ortiz denied owning any firearms in the United States. On cross-examination, he admitted that his mother had a .22-caliber handgun in Mexico.

On cross-examination, Ortiz denied that he was depicted in any video stills from the second market. Ortiz said the person in the video with the gun looked like his brother. He also denied he was the person in the first market's video surveillance.

Ortiz, 2020 WL 634411, at *1–3.

# III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Madera County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court

decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting <u>Wright v. Van Patten</u>, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Richter</u>, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision

adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." <u>Id.</u>

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not <i>de novo</i> review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

**IV.**

**DISCUSSION**

**A. Request for Appointment of Counsel**

At the same time Petitioner submitted his traverse on May 3, 2021, Petitioner also filed a request for appointment counsel. (ECF No. 16). There currently exists no absolute right to appointment of counsel in habeas proceedings. <u>See, e.g.</u>, <u>Chaney v. Lewis</u>, 801 F.2d 1191, 1196 (9th Cir. 1986); <u>Anderson v. Heinze</u>, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if "the interests of justice so require." <u>See</u> Rule 8(c), Rules Governing Section 2254 Cases. To determine whether to appoint counsel, the "court must

evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983).

In the request, Petitioner states that "an Evidentiary Hearing and the effective utilization of discovery is required to prove his Constitutional claims of a fundamental miscarriage of justice. As such, appointment of Counsel is warranted." (ECF No. 16 at 2). [5] Upon review of Petitioner's submissions in this case, the Court finds that Petitioner appears to have a sufficient grasp of his claims and the legal issues involved and that he is able to articulate those claims adequately. The legal issues involved are not extremely complex, and for the reasons set forth *infra*, an evidentiary hearing is not warranted and Petitioner does not demonstrate a likelihood of success on the merits such that the interests of justice require the appointment of counsel. Accordingly, Petitioner's request for appointment of counsel is denied.

**B. Sufficiency of the Evidence**

In his third claim for relief, Petitioner asserts that there was insufficient evidence to sustain the verdict. (ECF No. 1 at 8). Specifically, Petitioner argues that he "can prove that the identification of the Petitioner by the eyewitnesses was procured under unnecessarily suggestive circumstances arranged by Law Enforcement," and thus, "it is clear the Judgment of Conviction for all Counts was not supported by substantial evidence that 'reasonably inspired confidence' and was of 'solid value.'" (<u>Id.</u> at 33, 34 (citation omitted)). Respondent argues that it was not objectively unreasonable for the state court to find a chain of logic connecting the evidence to a finding of identity. (ECF No. 14 at 8).

On appeal, Petitioner's appointed counsel filed a brief pursuant to <u>People v. Wende</u>, 25 Cal. 3d 436 (1979), raising no issues and requesting that the California Court of Appeal independently review the entire record on appeal. (LD 7). In affirming the judgment, the California Court of Appeal stated:

> Ortiz's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende* (1979)

---

[5] Page numbers refer to the ECF page numbers stamped at the top of the page.

8

25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating [Petitioner] was advised he could file his own brief with this court. By letter on October 4, 2019, we invited [Petitioner] to submit additional briefing. To date, he has not done so.

After independently reviewing the entire record, we have concluded there are no reasonably arguable legal or factual issues.

Ortiz, 2020 WL 634411, at *3.

Thereafter, Petitioner raised his sufficiency of the evidence claim in his petition for review in the California Supreme Court, which summarily denied the petition for review. The Court presumes that the state court adjudicated the claim on the merits. See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Accordingly, AEDPA's deferential standard of review applies, and as there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

1. Unduly Suggestive Identification Procedure

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 565 U.S. 228, 238–39 (2012) (citing Manson v. Brathwaite, 432 U.S. 98, 112 (1977); Neil v. Biggers, 409 U.S. 188, 198 (1972)). Whether due process was violated by the identification procedure must be determined "on the totality of the circumstances," Stovall v. Denno, 388 U.S. 293, 302 (1967), and "courts [must] assess, on a case-by-case basis, whether improper police conduct created a

'substantial likelihood of misidentification,'" Perry, 565 U.S. at 239 (quoting Biggers, 409 U.S. at 201).

Although Petitioner contends that he "can prove that the identification of the Petitioner by the eyewitnesses was procured under unnecessarily suggestive circumstances arranged by Law Enforcement," (ECF No. 1 at 33), Petitioner does not provide any factual allegations[6] and nothing in the record indicates that the identification procedures were unduly suggestive. (See 1 RT 78, 157–58). For example, on cross-examination, J.S. denied that law enforcement "point[ed] . . . or suggest[ed] . . . a person that they identified," testifying that "not at any time did they point it out to none of them. And once I saw his face I was able to recognize him." (1 RT 78).

2. <u>Sufficiency of the Evidence</u>

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011). Moreover, when AEDPA applies, "a federal court may not overturn a state court decision rejecting a sufficiency

---

[6] The Court also notes that the petition for review filed in the California Supreme Court is nearly identical to the federal petition filed in the instant proceeding and is similarly void of factual allegations to support Petitioner's claims.

of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" <u>Cavazos</u>, 565 U.S. at 2.

In light of the verdict, the jury necessarily found J.S. and M.M.'s testimony and their identifications of Petitioner to be credible and R.I.'s failure to recall his pretrial identifications of Petitioner in the pictures shown by the police and of Petitioner's vehicle as a silver or gray Nissan Altima to be not credible. "[U]nder <u>Jackson</u>, the assessment of credibility of witnesses is generally beyond the scope of review." <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995). <u>See also</u> <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under <u>Jackson</u>."). Therefore, viewing the record in the light most favorable to the prosecution, a rational trier of fact could have found true beyond a reasonable doubt that Petitioner committed the offenses.

"[A]fter AEDPA, we apply the standards of <u>Jackson</u> with an additional layer of deference to state court findings." <u>Ngo v. Giurbino</u>, 651 F.3d 1112, 1115 (9th Cir. 2011) (internal quotation marks and citation omitted). Under this doubly deferential standard of review, the state court's denial of Petitioner's sufficiency of the evidence claim based on the alleged unreliability of the witnesses' identification of Petitioner as the perpetrator was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. <u>See</u> <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011) ("[W]hen we assess a sufficiency of evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted."). Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

## C. Sentencing Error

In his fourth claim for relief, Petitioner asserts that the trial court "erred in sentencing Petitioner to the aggravated term in Count 4 and the firearm allegation to a term of 5 years and

20 years respectively." (ECF No. 1 at 34). Petitioner appears to argue that his sentence on count 4 violates the Sixth Amendment because it was based on judicial fact finding. (ECF No. 1 at 37).

As noted in section IV(B), *supra*, Petitioner's appointed counsel filed a <u>Wende</u> brief on appeal. In affirming the judgment, the California Court of Appeal stated that "[a]fter independently reviewing the entire record, we have concluded there are no reasonably arguable legal or factual issues." <u>Ortiz</u>, 2020 WL 634411, at *3. Thereafter, Petitioner raised his sentencing error claim in his petition for review in the California Supreme Court, which summarily denied the petition for review. The Court presumes that the state court adjudicated the claim on the merits. <u>See</u> <u>Richter</u>, 562 U.S. at 99. Accordingly, AEDPA's deferential standard of review applies, and as there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 102.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. "[T]he 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004) (emphasis in original). "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." <u>Id.</u> at 304 (citation omitted). However, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." <u>United States v. Booker</u>, 543 U.S. 220, 233 (2005).

In <u>Cunningham v. California</u>, 549 U.S. 270 (2007), the Supreme Court found that California *then-existing* determinate sentencing law did not satisfy the requirements described in

///

Apprendi, Blakely, and Booker, and violated the Sixth Amendment.[7] "California responded to Cunningham by passing SB 40, which amended California Penal Code sections 1170 and 1170.3," but "retained the three-option scheme." Creech v. Frauenheim, 800 F.3d 1005, 1016 (9th Cir. 2015). "[T]he choice of the appropriate term would rest within the sound discretion of the court," and the "amended statute instructs sentencing judges to select the term which, in the court's discretion, best serves the interests of justice, and to state the reasons for its sentence choice on the record at the time of sentencing." Creech, 800 F.3d at 1015 (internal quotation marks and citations omitted). "In selecting one of the three terms, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." Creech, 800 F.3d at 1015 (internal quotation marks and citations omitted).

In Creech v. Frauenheim, the Ninth Circuit held that a "state court's determination that California's post-Cunningham revision did not violate [the petitioner]'s Sixth Amendment right to a jury trial was neither contrary to nor an unreasonable application of Cunningham, Booker, Blakely, and Apprendi." 800 F.3d at 1017. Similarly, here, the state court's denial of Petitioner's Sixth Amendment claim regarding the post-Cunningham imposition of the aggravated term of five years on count 4 was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner also challenges the imposition of the twenty-year term for the firearm special allegation on count 4. This twenty-year term was imposed pursuant to California Penal Code section 12022.53, which provides in pertinent part: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years." Cal. Penal Code § 12022.53(c).

---

[7] "Under California's pre-Cunningham determinate sentencing system, the Penal Code prescribed lower, middle, and upper term sentences for most crimes. . . . [and] required a court to impose the middle term unless there were aggravating or mitigating circumstances, which the court would determine based on consideration of enumerated factors." Creech v. Frauenheim, 800 F.3d 1005, 1015 (9th Cir. 2015). Aggravating circumstances were "facts which justify the imposition of the upper prison term . . . [and] were required to be established by a preponderance of the evidence." Id. (internal quotation marks and citations omitted).

The jury found the special allegation that Petitioner personally used and discharged a firearm during the commission of count 4 within the meaning of Penal Code section 12022.53(c) to be true. (1 CT 259). Accordingly, the trial court's imposition of the twenty-year term for the firearm allegation was solely on the basis of the facts reflected in the jury verdict. Accordingly, the state court's denial of Petitioner's Sixth Amendment claim regarding imposition of the firearm enhancement was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact.

Based on the foregoing, the state court's denial of Petitioner's sentencing error claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his fourth claim, and it should be denied.

**D.  Ineffective Assistance of Counsel**

In his first and second claims for relief, Petitioner asserts ineffective assistance of appellate counsel for failing to raise issues on appeal that he now raises in the instant habeas petition and ineffective assistance of trial counsel for failing to conduct a proper and adequate pretrial investigation, failing to file a motion to dismiss, a motion to suppress, and a motion for new trial, failing to object to various witnesses' testimony, and failing to object to the unlawful sentence imposed. (ECF No. 1 at 5, 7, 26, 29–30). Respondent argues the state courts' rejection of the ineffective assistance of counsel claims was reasonable (ECF No. 14 at 9).

1.  Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance

is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 575 U.S. 312, 316–17 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Trial Counsel

In his second claim for relief, Petitioner asserts ineffective assistance of trial counsel for failing to conduct a proper and adequate pretrial investigation, failing to file a motion to dismiss, a motion to suppress, and a motion for new trial, failing to object to and move to exclude various witnesses' testimony, and failing to object to the allegedly unlawful sentence imposed. (ECF No. 1 at 5, 7, 26, 29–30).

As noted in section IV(B), *supra*, Petitioner's appointed counsel filed a <u>Wende</u> brief on appeal. In affirming the judgment, the California Court of Appeal stated that "[a]fter independently reviewing the entire record, we have concluded there are no reasonably arguable legal or factual issues." <u>Ortiz</u>, 2020 WL 634411, at *3. Thereafter, Petitioner raised his sentencing error claim in his petition for review in the California Supreme Court, which summarily denied the petition for review. The Court presumes that the state court adjudicated the claim on the merits. <u>See</u> <u>Richter</u>, 562 U.S. at 99. Accordingly, AEDPA's deferential standard of review applies, and as there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

### a. Failure to Conduct Proper and Adequate Pretrial Investigation

Petitioner asserts that trial counsel was ineffective for failing to conduct a proper and adequate pretrial investigation. (ECF No. 1 at 30, 31). In <u>Strickland</u>, the Supreme Court declared that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 690–91.

Here, Petitioner provides no factual allegations with respect to his claim that trial counsel did not conduct a proper and adequate pretrial investigation.[8] Petitioner does not specify any avenue of investigation that would have revealed information helpful to his defense. Therefore, Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification

---

[8] <u>See</u> note 7, *supra*.

16

1  that there was an error well understood and comprehended in existing law beyond any possibility

2  for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to

3  habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to

4  conduct a proper and adequate pretrial investigation.

5  **b. Failure to File Motion to Suppress and Motion to Dismiss**

6  Petitioner asserts that trial counsel was ineffective for failing to file a motion to dismiss

7  and motion to suppress under California Penal Code section 995. (ECF No. 1 at 29). "Generally,

8  a defendant claiming ineffective assistance of counsel for failure to file a particular motion must

9  not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability

10 that the granting of the motion would have resulted in a more favorable outcome in the entire

11 case." <u>Styers v. Schriro</u>, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008).

12 "A criminal defendant is permitted to challenge the reasonableness of a search or seizure

13 by making a motion to suppress at the preliminary hearing. If the defendant is unsuccessful at the

14 preliminary hearing, he or she may raise the search and seizure matter before the superior court

15 under the standards governing a section 995 motion." <u>People v. McDonald</u>, 137 Cal. App. 4th

16 521, 528–29 (2006) (citations omitted). "In a proceeding under section 995, the superior court's

17 role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a

18 judgment. The superior court merely reviews the evidence; it does not substitute its judgment on

19 the weight of the evidence nor does it resolve factual conflicts." <u>Id.</u> at 529 (citations omitted).

20 Again, Petitioner provides no factual allegations with respect to his claim that trial

21 counsel was ineffective for failing to file a motion to dismiss and motion to suppress under

22 California Penal Code section 995.[9] Therefore, Petitioner has not overcome the "strong

23 presumption that counsel's conduct falls within the wide range of reasonable professional

24 assistance," <u>Strickland</u>, 466 U.S. at 689, and under the "doubly deferential" AEDPA review of

25 ineffective assistance of counsel claims, the state court's denial was not contrary to, or an

26 unreasonable application of, clearly established federal law, nor was it based on an unreasonable

27

28 [9] <u>See</u> note 7, *supra*.

17

determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to file a motion to dismiss and motion to suppress under California Penal Code section 995.

### c. Failure to Object to Witness Testimony

Petitioner asserts that trial counsel was ineffective because he "utterly failed on numerous occasions to make timely objections to. . . highly prejudicial testimony without proper impeachable cross-examination[.]" (ECF No. 1 at 29).

### i. Witnesses Who Identified Petitioner

First, Petitioner contends that witnesses who testified regarding Petitioner's identity were "clearly coached and thus should have been objected to." (ECF No. 1 at 29). To the extent Petitioner contends that defense counsel should have objected to the identification testimony as being the result of impermissibly suggestive identification procedures, as noted in section IV(B)(1), *supra*, Petitioner does not provide any factual allegations and nothing in the record indicates that the identification procedures were unduly suggestive.

To the extent Petitioner contends that defense counsel should have objected to the identification testimony due to lack of reliability, the record reflects the identification testimony was sufficiently reliable. J.S. was in a vehicle with the perpetrator when he robbed her, J.S. testified that she "remember[ed the day of the robbery] very well," she identified Petitioner as the culprit approximately one month after the incident when viewing two separate six-person photograph arrays (also known as a "six-pack"), and J.S. testified that "once [she] saw [Petitioner's] face [she] was able to recognize him." (1 RT 62–65, 75, 78). Although the perpetrator wore a mask, M.M. was able to view his face because the perpetrator pulled his mask down, and M.M. identified Petitioner as the culprit less than two weeks after the incident when viewing a six-pack photo array. (1 RT 158, 164–65). See <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114 (1977) (holding that "reliability is the linchpin in determining the admissibility of identification testimony" and "factors to be considered . . . include the opportunity of the witness

to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation"). As the identification testimony was sufficiently reliable, "trial counsel cannot have been ineffective for failing to raise a meritless objection." Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).

Based on the foregoing, Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to object to the testimony of witnesses who identified Petitioner.

ii.   Witnesses Who Did Not Identify Petitioner

Second, Petitioner contends that defense counsel should have objected to the testimony of witnesses who could not or did not identify Petitioner from being admitted into evidence and presented to the jury. (ECF No. 1 at 29). Some witnesses at trial testified regarding the criminal conduct alleged in the information, but could not identify Petitioner as the perpetrator. (1 RT 128, 201). Although these witnesses could not provide testimony regarding identification, their testimony regarding the criminal conduct charged in the information was relevant and highly probative and thus, there was no plausible basis for exclusion of said testimony. To the extent Petitioner argues that counsel should have objected to the testimony of R.I., who at trial could not recall having identified Petitioner in any pictures shown by the police, R.I.'s testimony and his prior statements to law enforcement that Petitioner was the individual depicted in the video stills from the first market and the cellular store were relevant and highly probative and thus, there was no plausible basis for exclusion of said testimony.

1    "Competent counsel could reasonably have concluded that moving to exclude [the

2    witnesses'] testimony on the grounds [Petitioner] now suggests would have seemed frivolous,"

3    Zapien v. Davis, 849 F.3d 787, 796 (9th Cir. 2015), and under the "doubly deferential" AEDPA

4    review of ineffective assistance of counsel claims, the state court's denial was not contrary to, or

5    an unreasonable application of, clearly established federal law, nor was it based on an

6    unreasonable determination of fact. The decision was not "so lacking in justification that there

7    was an error well understood and comprehended in existing law beyond any possibility for

8    fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to

9    habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to object

10    to the testimony of witnesses who could not or did not identify Petitioner.

11                          iii.     Law Enforcement Witnesses

12        Third, Petitioner argues that defense counsel should have objected to the testimony of the

13    police officers on the basis that said officers were subjective and not objective observers. (ECF

14    No. 1 at 29–30). As Petitioner provides no factual allegations[10] and the record does not reflect

15    that the law enforcement witnesses harbored any improper bias, the fact that the witnesses were

16    law enforcement officers, without more, is not a basis for objecting to or moving to exclude said

17    witnesses' testimony. "[T]rial counsel cannot have been ineffective for failing to raise a meritless

18    objection." Juan H., 408 F.3d at 1273.

19        Petitioner has not overcome the "strong presumption that counsel's conduct falls within

20    the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and under the

21    "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's

22    denial was not contrary to, or an unreasonable application of, clearly established federal law, nor

23    was it based on an unreasonable determination of fact. The decision was not "so lacking in

24    justification that there was an error well understood and comprehended in existing law beyond

25    any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is

26    not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel

27    failed to object to the testimony of law enforcement witnesses.

28    _____
[10] See note 7, *supra*.

### d. Failure to File Motion for New Trial

Petitioner asserts that trial counsel was ineffective for failing to file a motion for a new trial. (ECF No. 1 at 30). "Generally, a defendant claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case." Styers, 547 F.3d at 1030 n.5.

California Penal Code section 1181 provides in pertinent part that "[w]hen a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial . . . [w]hen the verdict or finding is contrary to law or evidence[.]" Cal. Penal Code §§ 1181(6), 1181(7). As set forth in section IV(B), *supra*, Petitioner does not provide any factual allegations and nothing in the record indicates that the identification procedures were unduly suggestive, and in light of the verdict, the jury necessarily found J.S. and M.M.'s testimony and their identifications of Petitioner to be credible and R.I.'s failure to recall his pretrial identifications of Petitioner in the pictures shown by the police and of Petitioner's vehicle as a silver or gray Nissan Altima to be not credible. Viewing the record in the light most favorable to the prosecution, a rational trier of fact could have found true beyond a reasonable doubt that Petitioner committed the offenses. Therefore, Petitioner has not established that there is "a reasonable probability that . . . the result of the proceeding would have been different" had defense counsel filed a motion for a new trial.

Based on the foregoing, Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to file a motion for new trial.

### e. Failure to Object to Sentence

Petitioner asserts that trial counsel was ineffective for failing to object when the court "erred in sentencing Petitioner to the aggravated term in Count 4 and the firearm allegation to a term of 5 years and 20 years respectively." (ECF No. 1 at 34). As set forth in section IV(C), *supra*, the imposition of the aggravated term on count 4 and the enhanced penalty from the firearm allegation did not violate the Constitution or federal law. "[T]rial counsel cannot have been ineffective for failing to raise a meritless objection." Juan H., 408 F.3d at 1273.

Therefore, under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that trial counsel failed to object to the sentence imposed.

### 3. Appellate Counsel

In his first claim for relief, Petitioner asserts that appellate counsel was ineffective for failing to raise the claims presented in the instant federal habeas petition on direct appeal. (ECF No. 1 at 26–27). As noted in section IV(B), *supra*, Petitioner's appointed counsel filed a Wende brief on appeal. In affirming the judgment, the California Court of Appeal stated that "[a]fter independently reviewing the entire record, we have concluded there are no reasonably arguable legal or factual issues." Ortiz, 2020 WL 634411, at *3. Thereafter, Petitioner raised his ineffective assistance of appellate counsel claim in his petition for review in the California Supreme Court, which summarily denied the petition for review. The Court presumes that the state court adjudicated the claim on the merits. See Richter, 562 U.S. at 99. Accordingly, AEDPA's deferential standard of review applies, and as there is no reasoned state court decision on this claim, the Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). As set forth in sections IV(B)–(D)(2), *supra*, the state court's denials of Petitioner's sufficiency of the evidence, sentencing error, and ineffective assistance of trial counsel claims were not objectively unreasonable. Therefore, the California Supreme Court could have reasonably determined that Petitioner's appellate counsel did not perform deficiently by filing a Wende brief. See Mena v. Ndoh, 770 F. App'x 339, 342 (9th Cir.) (holding that "it was not objectively unreasonable for the California Supreme Court to determine that [petitioner]'s appellate counsel did not perform deficiently by filing a Wende brief" when the state court could have reasonably determined that petitioner's claims did not constitute "viable appellate issue[s]"), cert. denied, 140 S. Ct. 376 (2019).

Based on the foregoing, Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on the ground that appellate counsel filed a Wende brief.

## V.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

Further, IT IS HEREBY ORDERED that Petitioner's request for appointment of counsel (ECF No. 16) is DENIED.

*///*

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 21, 2021**                    /s/ Erica P. Grosjean
                                             UNITED STATES MAGISTRATE JUDGE